the court. My name is Paul Turner. I'm with the Federal Public Defender Office in Las Vegas, Nevada. I'm here this morning representing Donald Towne. Your Honor, I'd like to reserve two minutes for rebuttal, and if the court would help me a little bit on that in case I don't notice the clock, I'd most appreciate that. Okay. Thank you. I have a few very quick housekeeping items to note for the court. In my opening brief under bail status, I incorrectly indicated that my client had two consecutive life with the possibility of parole sentences. Of course, the truth is that these are life without the possibility of parole sentences, which I think is made clear otherwise, but I wanted to note that for the court. Also on page five of my reply brief, I cited a case, Ibarra, I-B-A-R-R-A, that a month after my brief went in was questioned in some way. It's a California case. I don't believe it's questioned in any way pertinent to what I'm going to be the court as a correction. The certified issue that's currently before the court deals with the package deal nature of the plea that Mr. Towne entered into in this case. There are two other issues that are not certified, and I'm going to assume, for the moment at least, that the court does not want me to get into those issues, and if it does, it will direct me to do so. With respect to the package deal nature of this plea, there are two or three very important things to note here. First of all, the facts, and I think the Court's well aware of those facts. You have multiple teenage defendants who are all being told that they are the, quote, last person to determine whether this plea will be accepted, and that if they do not go along with this ---- Just a minute. Yes, sir. Mr. Turner, Mr. Ogilvie, who represented one of the lawyers for Towne, said he did not say that to Towne, as I read the record of the State court hearing. But Ms. Erickson, the other attorney, may or may not have. She didn't testify, and your client says that she did. Your Honor, I believe that is correct, Your Honor, and I think the explanation to that may be that on the evening of the 4th, the night before, they didn't even have the written plea agreement, and there's no indication in the record that the subject of the package deal nature was even discussed. The next morning ---- Didn't the State supreme court simply assume this fact in its decision, or essentially buy it as a fact? Yes. The State supreme court ---- Because the State had proceeded on that premise that we were banned by that and should ---- Well, that is a finding of fact, and they did find that at least Mr. William Rowater and Mr. Towne were told that they were both, quote, last, which I would submit is a physical impossibility. You can't both be last. Something's wrong here. So we take that as an accepted fact? I believe we do, Your Honor. I think ---- but just to respond to your point, though, obviously, Your Honor, the morning of the 5th, I think Ms. Erickson met with Mr. Towne by herself initially, I believe. And I believe that may explain any sort of discrepancy between what Mr. Ogilvie may recall and what Ms. Erickson recalled. At any rate ---- I correct Ms. Erickson did not make a declaration, or did she testify? She didn't testify. And I noted that last night when I was getting ready for today. That seemed, frankly, unfortunate to me, but that's the fact. So ---- I don't think she filed a declaration either, did she? I don't believe she did. But I guess maybe that doesn't make any difference if the State court ---- well, the only other thing is, is ---- well, I guess it would be a lie, because they couldn't all be the ---- well, I guess they ---- no, they couldn't all be the last. Anyway. No, Your Honor, they can't all be last. The focus of your argument on the misrepresentation or on the package nature of this? I'm sorry. I'm ---- The case seems to be shifting focus occasionally from whether it's about the misrepresentation about him being last, or whether it's about whether he actually was last, or whether it's from the fact that it was a package deal at all. Let me ---- I guess I can help you on that or try to. Anyway, you're right. First of all, the overlay to this case, in my judgment, is that this is a package deal plea. It deserved closer scrutiny. As one of the courts, I think it was the Arizona Supreme Court, said in one of the cases I cited, this situation is fraught with danger. This situation deserved the closest attention of this trial court. And actually, I think the state court said that the trial court was aware of it, but the trial court was not aware of it. No, it was not. In fact, I may have misled this court. In my brief, I now realize after I go back and read my own brief, where I got a little off track, I think, is that the trial court found out about it later when the motion to withdraw a guilty plea came on before it. That was the first time in my judgment on this record the trial court ever knew this was a package deal plea. But not at the time of the guilty plea? I'm sorry? But not at the time of the guilty plea? No. No. There's nothing in the record that indicates the judge was ever told. No case holding that there's a constitutional requirement as opposed to a Rule 11 requirement that the package deal be exposed. Well, Your Honor, there's obviously the general law dealing with the voluntariness of the plea and the fact that you look to the entire circumstances of the situation. It's not a colloquy question or a level of investigation question. I mean, it just means that there's an inquiry. We have to make an inquiry, but not that the trial court should have made one. Right. I mean, there's no hard and fast rule. But I think looking at the circumstances in this case only, in this case, the judge certainly should have been told that by somebody in that courtroom dealing with teenage defendants and the obvious peer pressure. Think about this. Peer pressure when you have a solid family. Peer pressure is real tough when you've got a great mother and father. My client didn't have a great mother and father, and he's living with a number of these other people. He's actually out in the desert living with them in a trailer, if you will. You talk about peer pressure. You don't get more peer pressure than in this case. Right. So now can you explain in some detail, because the logic of this is sort of interesting and intriguing, why it makes a difference that he falsely thought he was really last, or then if he was just part of a package deal? I think it's coercive. It would be coercive under any circumstance, but it seems to me that... But the package deal itself, we know, is not coercive enough to be just reversible without more. No. Okay. No. You have to look at the facts of each situation. And I think if you were truly last and you happened to be told honestly by your lawyer, you're it, you're the last one, obviously that is coercive. But I think I don't see any legal impediment to that. That's just truth. Do we know that he was not last? No, we don't know that he was not last, Your Honor, because... We know two people were told that. We know two people were told they were last. But he may have been the last, so it may not have been a misrepresentation to him. But the important thing here is that he was lied to by his lawyer, that they misrepresented the truth, and that there was something, there was a trickery element to this process. That's one of the distinctive factors here. But Judge Reinhart's point is that the other guy may have been tricked, not him. Well, yes. And that would go also to the fact that... But do you get the benefit of the fact that the other co-defendants who pled guilty so that you're told, let's assume you're the last, and you're told all these others pled guilty, that their plea was based on a misrepresentation? Do you get the benefit of that misrepresentation? Well, you certainly could argue that the entire process is flawed. But you could argue the entire process... And should go. You could argue the entire process is flawed and that we all should start over again and have a legitimate plea. You obviously could have a fair process where you just happen to be the last one. I mean, that could happen, obviously. To the extent we don't know, I would say that this Court could certainly order an evidentiary hearing be held below to ferret out those additional facts. I'd certainly like to ask some questions from all the lawyers involved in this case. But I haven't had a chance to do that. That would be one possibility here. But the State Supreme Court didn't seem to focus at all on any... Although it noted that two of them were told the same thing, it didn't focus on any misrepresentation kind of notion. No. Was that argument made to the State Supreme Court in that fashion, or was it simply the coerciveness of the package deal? I think the argument was basically made on the basis of coerciveness of the package deal. There was some argument in there about the lawyers. I can't honestly tell you I remember the briefs reading. I've read the briefs, obviously, but I don't remember precisely what was briefed. I don't believe there was any oral argument. So you don't have a whole lot of record developed in this kind of situation. I'd also just like to note that another overlay to this case is my client's mental health issue. When you look at the entire circumstances, because we're all within this bigger plea situation here, when you look at the circumstances here, my client, as the pre-sentence report verifies that went to the judge after the fact here, was, as noted in the pre-sentence report on excerpts of record page 85, that his ability was handicapped to understand language, but the most simple communications. So you not only have a teenage client, you not only have a peer pressure, but you've got somebody who doesn't understand very well. And all of this is happening within 18 hours, most of it the morning of the 5th of January. And I would submit that this is not a fair plea. This is not a voluntary plea. This is not a knowing plea. And this case should be reversed. And at most, at least, we should get an evidentiary hearing on any facts the court may be concerned about. But I believe the plea should be vacated, and this man deserves to have a new trial. Thank you. Thank you, Chris. Good morning. May it please the Court. My name is Vic Schulze. I'm with the Nevada Attorney General's Office here for the Warden and the Attorney General Brian Sandoval. Let me address the Court's central concern right off the bat, and that is the apparent inconsistency between these comments that appear in the record that both Mr. Towne and Mr. Roweeder apparently were told they were the last to respond to this package deal. I'm guessing that the reason counsel would like this Court to order, to remand and order an evidentiary hearing is that this inconsistency was never dealt with in the state hearing. The reason that the federal judge below did not order a hearing was that we had extensive hearings on this issue, the evidentiary hearing, in the estate district court in Las Vegas. There is an inconsistency as between whether Mr. Towne or Mr. Roweeder went last on accepting this package deal. I don't know what the answer is. I don't know who was last. None of us know, and the inconsistency is simply in the record. But I would suggest to the Court... Impellants were required to respond prior to trial the next day, and each were told that he was the last of the defendants to agree and might be responsible for the imposition of the death penalty on one or more of his co-defendants. So don't we have to go forward on that understanding of the record? You need to go forward with that understanding of the record, also understanding that at the end of the evidentiary hearing before Judge Mosley, the district court judge, on EOR page 599, Judge Mosley rejected Roweeder's testimony completely. He found Roweeder was not a credible witness. He said Roweeder apparently is basing his entire argument on this representation by his counsel, and the judge found Roweeder was not credible. I would also direct the Court to Towne's testimony and to the opening brief. 599, is that what you said? I believe it's on page 599, which should be the very end of that state evidentiary hearing. I would also point out that in the opening brief filed by counsel in this case, counsel points out that when on the morning, I think it was January 5th, which was the second morning when they were talking about this plea deal with the attorneys... I actually had to go back to the 599. It's not entirely clear what he's referring to. We could be referring to this when he says that Mr. Pender, I can't really think that's not true, but Mr. Pender has a rather specific recollection of what was indicated, and I intend to think his representations were truthful. Pender was Roweeder's lawyer? I believe he was. He was one of the two, all that had two lawyers. I think all the defendants did. Still, the State Supreme Court said what it said, so how do we, we're going to refine what the State Supreme Court thought happened? No, I think you have to go with what the State Supreme Court said, but I think the what happened in the trial court. I think it's important, the other issue that's important is counsel takes that fact and counsel finds a conspiracy. He finds counsel lied. He's finding that all these attorneys are trying to coerce these clients into accepting this deal. There, of course, is no evidence of that. There was testimony by two of these murder-habeas petitioners who were in prison for life, both of whom testified that I was told I was the last. I would also point out, it's interesting that when Towne was asked, why did you feel pressured at this hearing, he didn't say I feel pressured because I was the last. What he said was, I felt pressured simply because I wasn't given enough time to review the documents. And he also said, or he sent a declaration that he felt guilt, that he felt that he wasn't going to be responsible for the death of the client. He didn't, my recollection of the record is he didn't use the word pressure at that point. When he was asked, why did you feel pressured in deciding it, what he said was, I felt pressured because I did not have enough time to review the document. Now, that fact, along with the argument in the opening brief, in this case, where Mr. Towne specifically argued, he was brought into the jury, I think it was the other defendants were sitting around the table at that point in time. Towne went in there and Towne was the only one, according to his testimony, who was signing the document. Now, I read that to indicate that Towne was the last one who signed because in his testimony, he doesn't refer to anybody else signing the document. Let's, for the moment, assume that we are bound by what the State Supreme Court said and that, in fact, two of them were told that they were last. But we don't know which one was really last, but two of them were told they were last. How would that affect your analysis of the coerciveness of the plea? And your brief just doesn't address this. It just ignores it. It doesn't affect it at all. And the reason it doesn't affect it at all is I agree with counsel that there's an inconsistency as to who was last. But I also agree with a comment of Judge Reinhart, and that is we don't know who was last. Keep in mind, this is habeas. This is a review of a review of what happened in this representation. Both the Nevada Supreme Court and the district court, federal district court below, denied relief in this case. If we do not know who really was last, then I would suggest to you Towne simply can't meet his burden on habeas corpus. He's got the burden as the petitioner. Nobody inquired on that specific issue as to who really went last at the hearing, yet we had a day-long evidentiary hearing. I would object to the concept that we should go back and have another evidentiary hearing in state court simply to fix the mistakes perhaps that were made below. Keep in mind, there's no right to the effective assistance of counsel at an evidentiary hearing below. If this issue was not gone into, wasn't delved into sufficiently by all these different lawyers at this evidentiary hearing, I think simply Towne does not meet his burden on habeas. He left an issue undone. He left that issue unaddressed. I don't think it's fair now that we go back and try to fix those mistakes in a second hearing simply because they didn't address it. But if there's an inconsistency, I agree with Judge Reinhart, we don't know what the answer is. But the fact that we don't know what the answer is means Towne has not met his burden of proof. Do you think it's dispositive, whether he was the third or the fourth person? I don't. I think it's far less relevant than counsel thinks because it's a package deal. And I'd point the Court to the caroling. What may well be relevant is whether he falsely thought he was the last person, because one might evaluate one's options differently depending on whether one's own evaluation of what your fellow defendants and close friends might do. So if you are not the last person, you might say, well, I don't need to do this because I know Joe isn't going to do it. And so we'll both hang, because I just know him and we'll just hang out together and it won't be a problem. In other words, you have a factor taken off the table, which is your calculation of other people's likelihood of agreeing. And therefore, you become much more and falsely responsible, more responsible than is actually the fact, for the death of other people. Potential death. Well, you might. And again, to get into that, I think we're getting into a lot of speculation. A lot of speculation. It's just pure logic in terms of what options are taken off the table. It might happen. Falsely, if you're falsely told that you're last when you're not last. Understand that. If it happened, and again, we don't know that it was a false declaration. I'm now questioning your statement that it doesn't matter. No, I understand. We don't know if it was a false statement to Mr. Towne. I think the record indicates it was not a false statement to Mr. Towne. I think the record indicates that it's more likely it was true, but Your strongest argument is that the record doesn't indicate and that that redounds to Petitioner's problem, but As to whether or not it matters, the issue here is that it was a package deal. And the issue is that whether you go first, second, third, or fourth out of four defendants, any of these people, whether you go first or second, has veto power. But under Blackwood Alleged v. Allison and other cases, you're entitled, when you plead guilty, to evaluate your actual risks. Absolutely. And if you were misled, including by your own lawyer, and we have a strong, fairly recent case in this court saying this, including by your own lawyer, in terms of evaluating your risks, then you quite possibly don't have a voluntary plea. I think if the lawyer misled, I think if Ms. Erickson intentionally misled the client, I think we've got a big problem. Yes, I concede that. But there's no indication in the record that that happened. Because this is a package deal, I point the court to the standard in this court's CARO test that I think was in both of our briefs that we both cited. CARO stands simply for the proposition that these package deals are special regarding two issues and two issues only, beyond what I guess we could call a standard Boykin plea. And that is whether or not there's an increased probability for external threats or external promises from other defendants. That is what the CARO court goes into. And I point out there is absolutely nothing in here, nothing in the record to support the fact that other defendants or other defendants' attorneys made threats or promises. As a matter of fact, in the plea hearing, repeatedly, in the guilty plea memorandum, repeatedly, Towne repeatedly told the district, he was asked those two questions. The court conducted a CARO-style canvas, asked him very specifically, were you threatened? The defendant did say, quite explicitly and quite contrary to what you said earlier, several times, that why did you plead guilty? Why did you not go to trial? Because it was the all or nothing deal. I felt that if I didn't plead guilty, I didn't want the rest of my co-defendants facing the death penalty. And why did you sign? Do you still have a guilty plea memorandum? No. Why did you sign it? Because I was the last one. I didn't want it on my conscience that the rest of my co-defendants may receive the death penalty. So there is clear evidence here that the last the his understanding that he was the last one was the reason he signed this document. Therefore, it seems the question is, does that matter? If he was not the last one? I'm sorry? Does it matter that that's, that he only did this because he was the last, he thought he was the last one if he wasn't the last one? I agree, I agree with the court that the issues that you're going to be concerned with in this kind of deal may be impacted by being told you were the last individual to sign it. Because now the veto power is, the veto power is yours alone. But I'd also point out to you in one of these package deals, everybody has veto power. And I'm not sure that that level of pressure is really that much higher. Because the second defendant to go into this also has veto power too. And so going to the, going to a prejudice issue, I'm not sure that there's really that much more pressure. I would point out to the court, I'd point out something, as I was saying, very important under Caro, Judge Mosley specifically asked this defendant repeatedly, have you been threatened? Did you get any promises made to you or anybody close to you, aside from those in the guilty plea memo, to both of those questions regarding threats and promises? He wasn't threatened. He said no, repeatedly. All that's true. If he was, and if he was really the last person, then we all agree that he should know that, and there's not a problem. But if he, so everything he said at that plea is irrelevant, because it depends whether he was, was lied to, essentially. To that extent, there's nothing in the record that indicates he was lied to. There's nothing in the record that indicates who went last. And again, I agree with you, hopefully, that this is my strongest argument the respondents have in this case. We don't know who went last. If that, to the extent that that's an important controlling fact in this case, town has not met its burden. And I would hope you would not send this back to the district court simply to fix the mistakes that counsel didn't go through in the state evidentiary hearing. They may have left a gaping hole in the evidence, but they were given a hearing, they were given that opportunity, good lawyers were appointed to represent them. If they didn't, they didn't make their case then, that should be the hunt and the chase. That ought to be the end of the case. If they left a hole in their analysis, they lose. It's that simple. Well, that's, that was my question before. If they lied to, to the first three, and he is the fourth, and the reason that there is this package deal and the reason he's put in this position is because of having to be responsible for the death of his friends, if he says no, if the reason for that is because the entire package deal is obtained through a series of lies to three out of four, my question is, does that taint the fourth? Or is he the only one who the other three could, could have their deal called off because they were lied to, but because he was the fourth, he couldn't. Is that necessarily, or is that the case? That three out of four would go free and, or get their deal set aside, and the last one would be stuck with the deal? Your Honor, I'd respond with, with two comments. I've been coming up here for ten years as a habeas attorney. I will never come before this court and argue that it's okay for a defense attorney to lie to a client, because that's simply going to be problematic. We may argue about prejudice, and we may argue about whether somebody relied on that, but I'm never going to argue that it's okay for a defense attorney to lie. But I would point out that the issue here, to the extent that the issue is the sufficiency of that state evidentiary hearing, and to my point, to my way of seeing it, on this issue, that's the central point. To the extent that counsel... My question is, if the lies were done, were made to the other three, but he wasn't lied to because he really was the fourth, but he was put in that position because of the lies to the other three, does that mean that he, his deal is all right, and the other three is not, are not all right? I think... Does it mean that all four are tainted by the fact that he's, there is a package deal permeated by lies? Right. I'm not saying that this happened. I understand. No, I understand your question. I don't believe, first of all, as between, the issue here is between this Roweeter defendant in town, to the extent that Roweeter may have been the one who was, to whom the misrepresentation was made, and I'm certainly not going to assume it was a lie by counsel, but to the extent that there was a miscommunication made to Roweeter, I certainly don't think that affects town. I certainly do, because there's no evidence, for example, that town knew that Roweeter at that time, Roweeter was told he was the last one. I don't think that's in the record. Secondly, I don't think town can argue Roweeter's constitutional rights, especially in light of the fact that he did not know that that representation was made. The argument, the argument would be that he was put in the position of being last through misrepresentations and wouldn't have been last if those misrepresentations hadn't been made to other people. I would assume, since I'm the, I'm the party who does not have the burden of proof in this case, and I think I have a right to stand on my burden, I think I can presume that Mr. Town went last, because since Mr. Town is the burden here, he did not show that he did not go last. He cannot show that there was a misrepresentation. I think that's a key issue. Should they have gone into that at the evidence we're hearing? Should they have, should somebody have called Ms. Erickson? Yeah, she's right there in Las Vegas. They ought to have called Ms. Erickson to ask her, what did you tell him? We know Ogilvie did not, but we don't know that Erickson made a false representation. I would suggest to you between the court, the court finding Roweeter incredible, and the fact the description of these events in the opening brief, where counsel points out that the only one signing the document when they went into that group session was Town, that at least implies, I agree it's indirect, but there is some indirect implication at least, Town was the last one to sign. He was the last one to sign on. There is no indication at that group hearing, sorry, that group meeting, that anybody else was signing. So at least it's an indication that what Ms. Erickson told Town, in fact, was correct, was the truth. Was Roweeter misled? I don't know. He may have been. I can't answer that question. But if we don't know, that means the hearing was conducted insufficiently, but they got their hearing, and that's the way habeas works. Thank you. The error here is not with the state evidentiary hearing. The error here is with the plea canvass at trial, or before trial. Plea canvass is where the mistake was made. Mr. Town, if the proper plea canvass had been conducted, the questions would have been asked by the court in a package deal context. A logical question from the court would have been, Mr. Town, has anyone told you that your decision is related to the decision of anyone else in this room? That would be the first question from the court on a package deal. That question never came. Are you suggesting that there was a constitutional violation that we could review and premise our decision on because of that lack of a colloquy as opposed to the substantive question of whether there was, in fact, coercion? I think the lack of a colloquy is part of the you have to have the package deal overlay, and that's all I'm saying. That is sort of the first So if there was a lack of a colloquy, there was a lack of a colloquy, but that isn't our problem at this point, is it? Well, it explains, though, why we're here today, actually, because if there had been a proper colloquy, this issue would have been addressed right when it should have been. It was an extensive hearing, and these issues could have been resolved and weren't. Right. Well, there was What's the consequence of that in terms of burdens of proof and how we decide the case? I don't think the fact that the witness was not called at the hearing is of any relevance here this morning. I don't think I think what I'm what we want to do is have a federal evidentiary hearing. I think the federal court has an independent right. If they feel that there's a fact in dispute that's never been resolved, I think that I think they have a right to hold a hearing, and I think that's what we're asking for. It's unfortunate, and it all started, though. My point would be that it all started with the plea agreement, with a plea canvas failure and a breakdown there, and that's Mr. Towne is the one who's paying the penalty for that, and that everything after that sort of emanates from the plea canvas. My last point, Your Honor, would be that I think that the whole process is tainted in your hypothetical where the first three people were lied to. A plea bargain is a contract, and if the factual underpinnings for the entire contract are false, the whole contract falls. So I think in that hypothetical, the whole package deal would come crumbling down, even though Mr. Towne may have been talked, you know, truthfully with at the end of this line. If the first three steps in the process are false, the contract can't be enforceable, because it's a joint agreement. It's not a several agreement. It's a joint agreement. Thank you very much. Thank you, Kevin. The case just argued will be submitted. The next case to be addressed
judges: Reinhardt, Thompson, Berzon